**ARNSTAD v. UNITED STATES et al.**

No. 7522.

District Court, W. D. Washington, S. D.

Aug. 27, 1946.

Harry H. Johnston, of Tacoma, Wash., and Sam A. Wright, of Seattle, Wash., for libelant.

J. Charles Dennis, U. S. Dist. Atty., of Seattle, Wash. (Bogle, Bogle & Gates and Edw. S. Franklin, all of Seattle, Wash., of counsel), for respondents.

LEAVY, District Judge.

The libelant, who was a voluntary passenger on the S. S. Barinoff which was making a voyage from Alaska to the City of Seattle on the 7th day of August, 1945, was injured while in the act of passing through an open doorway on said vessel and has brought this action in Admiralty to recover damages sustained.

The right to travel on this vessel which was operated by the War Shipping administration was evidenced by a ticket that had been issued to him, which was designated as a "Warshipticket." The Terms of this ticket were printed thereon, and under existing regulations the passenger was required to assent to them and evidence such assent by signing the ticket.

The administrator of the War Shipping Administration, pursuant to authority expressly conferred upon him by the President under the provisions of the War Powers Acts, which regulation was referred to herein as Executive Order 9054, 50 U.S.C. A. Appendix, § 1295 note, caused to be printed on the "Warshipticket" the covenant mentioned by which the passenger assumed all the risk of travel upon the ship here in question as well as all others so operated.

The limitation of liability stems from the War Powers Acts and the executive order taking over privately owned and operated merchant ships by the Federal Government. It is directly contrary to the provisions of 46 U.S.C.A. § 183c, which prohibits stipulations limiting liability for negligence.

The question for determination here is: Did the covenant contained on the "Warshipticket" suspend the operation and effect of Section 183c, supra?

I appreciate the importance and significance of the question that is presented. The libelant relies upon his right to maintain this action solely upon the law as it existed prior to our entry into the war. The respondent contends that the statutory liability of a passenger-carrying vessel was not operative or effective during the war period, when this cause of action arose. The issue, therefore, is whether the constitutional powers conferred upon the President in time of war, plus those broad general powers given him by Congress after our entry into the war, have the effect of suspending the act relied upon by the libelant.

Private properties such as merchant vessels, were all taken over by executive orders or proclamations and made, for the time being, public properties used for the purpose of prosecuting the war. Executive orders and regulations concerning the operation of these merchant ships were promulgated and based upon these, a stipulation was written into the contract of transportation for a private citizen, which contract was known as the "Warshipticket." The individual, before he could secure such transportation, was required to agree that he would waive any right of action that may arise under ordinary circumstances in his favor and against the carrier. Such an agreement was prohibited when the carrier was operated privately and not as a unit in the United States naval establishment.

I have given considerable thought to this matter since it was first submitted to me, and I have sought, as counsel on both sides has sought, to find some direct authority upon the issue, but can find nothing. The fact that Congress saw fit to enact special legislation affecting seamen and secure to them their right of action is to me very persuasive that it recognized the effectiveness and validity of these various executive orders, and if they were effective and valid, then, of course the stipulation in the "Warshipticket" is effective and valid, and in turn would bar this right of action.

I feel, under the circumstances and the limited authority that we have to guide us, that I shall have to sustain the exceptions submitted. I would not want to say that it is one of those instances where the court feels there is no room for any doubt whatever, because there is at least room for a doubt as to whether the conclusion I arrive at is a correct one.

The whole situation as here presented must be viewed, certainly not in the light of conditions that existed prior to our entry into the war, nor even in the light of conditions that prevail today, but rather under conditions that existed and prevailed while we were actually engaged in war. It is true that the time of the injury alleged here is just shortly after V-J day, but entire government machinery was still geared to active war movements, and the merchant marine vessels that had been privately operated and owned previously, were still an auxiliary to the Navy—directly under Navy orders, directions and command.

It is argued here that the particular passenger in question was stranded in Alaska and had no other way to get home except on one of these vessels—that argument has some force; and certainly he should be given the protection that Congress intended for passengers on merchant vessels. I am still of the opinion, however, that when this changed condition arose after our entry into the war, action on the part of the Chief Executive in taking over, almost forcibly, we might say, the property of the owners and operating such properties in order to further the war effort, would have the effect of making the regulations in connection with such operation valid regulations.

The limitations fixed in the "Warshipticket," where a private citizen found himself in a position in which he had to move from place to place by water transportation, were effective and valid. Believing I am

correct in that conclusion, I shall have to sustain the exceptions and dismiss the action, and allow an exception to the Court's ruling.

Incidentally, in conclusion, I might say we have a brief record; the question is a close one, and the Circuit Court of Appeals might view the matter in a different light.